IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LAMONTE R YOUNG, SR.,**

    Plaintiff,

    v.

**PROGRESSIVE TREATMENT SOLUTIONS, LLC,**

    Defendant.

**Case No.  22-cv-229-JPG**
CJRA Track: B
Mandatory Meditation: Yes
Final Pretrial Conf: 5/3/2023
Bench Trial: 5/15/2023
Judge J. Phil Gilbert

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant Progressive Treatment Solutions, LLC ("Defendant" or "PTS"), by and through its attorneys, Littler Mendelson, P.C., files this Memorandum of Law in Support of its Motion for Summary Judgment as to all of Plaintiff LaMonte R. Young, Sr.'s ("Plaintiff") claims, and states as follows in support of its Motion:

**I.    INTRODUCTION**

In his Complaint, Plaintiff alleges that PTS discriminated against him based on his race (African American) and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Illinois Human Rights Act ("IHRA"), and 42 U.S.C. § 1981 ("Section 1981").  Plaintiff also alleges that PTS violated Sections 15(b) and 15(c) of the Illinois Biometric Privacy Act.

As set forth in more detail below, PTS is entitled to summary judgment on all of Plaintiff's claims for several reasons.  With respect to his race discrimination claim, Plaintiff cannot demonstrate that he was meeting PTS's legitimate performance expectations (he was terminated for smoking marijuana in a Company vehicle during work hours), that PTS's reason for his

termination was pretextual (*i.e.*, a complete lie to cover up discrimination), or that a similarly situated employee outside of his race was treated more favorably. Further, Plaintiff cannot demonstrate racial animus when the decision-maker that recruited him to PTS, hired him, gave him pay raises, approved substantial overtime, and terminated his employment – is the *same* race as Plaintiff (African American). Plaintiff's retaliation claim fairs no better. Simply put, Plaintiff cannot demonstrate that he engaged in protected activity, that the decision-maker was aware of any complaint, or that there was causal connection between any protected activity and his termination. Lastly, Plaintiff's BIPA claims fail outright because he voluntarily executed a consent form for the use of his biometric information, he never revoked his consent, and he testified under oath during his deposition that all of the allegations in the BIPA counts (Counts VII and VII) are *not* truthful and accurate. Accordingly, the undisputed facts show that PTS is entitled to summary judgment and that Plaintiff's Complaint should be dismissed in its entirety and with prejudice.

## II.     RELEVANT FACTS[1]

On September 26, 2019, PTS hired Plaintiff LaMonte Young ("Plaintiff") (African American) as a Security Officer and Transportation Driver in the Security and Transportation Department of its East St. Louis, Illinois facility. (SOF ¶¶ 8-9). Plaintiff learned of the open position at PTS through Patrick Jackson ("Mr. Jackson") (African American), Assistant General Manager and Manager of Transportation and Security, who is close friends with Plaintiff's cousin and fellow PTS employee, Corey Dent ("Mr. Dent") (African American). (SOF ¶¶ 6). At the encouragement of Mr. Jackson, Plaintiff applied, interviewed, and accepted the position of Security Officer and Transportation Driver. (SOF ¶¶ 6-7). Upon his hire, Plaintiff reported directly to Mr. Jackson. (SOF ¶¶ 9). Andy Halencak ("Mr. Halencak") (White) is the facility's General

---

[1] PTS incorporates by reference its contemporaneously filed Statement of Material Facts ("SOF") setting forth the undisputed facts material to this case.

Manager. (SOF ¶¶ 4).

As a Security Officer and Transportation Driver, Plaintiff was responsible for watching cameras, performing rounds, loading trucks, delivering loads to different dispensaries in the State of Illinois. (SOF ¶¶ 9). Product deliveries were made in tandem with two Transportation Drivers. (SOF ¶¶ 14). Plaintiff never drove and made product deliveries alone. (*Id.*). The Security and Transportation Department was comprised of mainly African American employees, and, at the time of Plaintiff's termination, was comprised entirely of African American employees. (SOF ¶¶ 5).

On November 22, 2019, Plaintiff voluntarily executed PTS's Biometric Information Privacy Policy for the use of his biometric information. (SOF ¶¶ 59). Following his execution of the Policy, Plaintiff began clocking in and out using a Paychex. (SOF ¶¶ 66). Plaintiff never revoked his consent. (SOF ¶¶ 65).

Plaintiff received generally positive performance reviews from Mr. Jackson, who was responsible for evaluating Plaintiff's performance. (SOF ¶¶ 17). Along with the performance reviews, Mr. Jackson approved four raises for Plaintiff, who began his employment earning $15.00/hour and was earning $19.00/hour by the end of his employment. (SOF ¶¶ 18). In addition, Mr. Jackson approved many hours of overtime work for Plaintiff – approximately 70 hours of overtime per week. (SOF ¶¶ 16).

Plaintiff's performance worsened within the six months leading up to his employment ending. (SOF ¶¶ 20). During this time, Mr. Jackson had multiple verbal reprimands and discussions with Plaintiff regarding his practice of taking unauthorized stops while making product deliveries to look for personal vehicles, shopping, drinking alcohol while riding as the passenger, and taking extended lunch breaks. (SOF ¶¶ 23). Mr. Jackson also discussed a complaint he received

3

that Plaintiff was smoking marijuana in a Company vehicle while making deliveries. (SOF ¶¶ 21-22). At the time, it was not Mr. Jackson's usual practice to follow up verbal reprimands with a written disciplinary form, and, as such, Plaintiff did not receive any written disciplinary forms. (SOF ¶¶ 19). Plaintiff's frequent driving partner, Jason Fiedler, witnessed the following conduct by Plaintiff during Company time: smoking marijuana, making personal stops (including purchasing a personal vehicle, watching pornography in a Company vehicle, and drinking alcohol. (SOF ¶¶ 54-57).

On Saturday, May 15, 2021, Mr. Jackson held an all-employee meeting for the Security and Transportation Department employees. (SOF ¶¶ 25). Mr. Jackson's intention in holding the meeting was to help the employees resolve ongoing issues, including employees concerns in general regarding Plaintiff's work performance. (*Id.*). At the meeting, Plaintiff became defensive and engaged in back-and-forth arguments with other employees. (SOF ¶¶ 27). Once it became clear to Mr. Jackson that the meeting would not resolve the issues amongst the employees, he ended the meeting. (*Id.*). Following the conclusion of the meeting, Plaintiff, Mr. Jackson, and several other employees remained on the premises chatting and smoking cigars in a friendly manner. (*Id.*). Despite Plaintiff's arguments during the meeting, Mr. Jackson did not consider terminating Plaintiff's employment. (SOF ¶¶ 29). Mr. Jackson did not issue any disciplinary action following the May 15, 2021 meeting to any Security and Transportation employee. (*Id.*).

On Sunday, May 16, 2021, Mr. Jackson's son and fellow Security and Transportation employee, QueAnthonee Jackson, self-reported to Mr. Jackson that he and Plaintiff had smoked marijuana together on multiple occasions while making product deliveries in a Company vehicle. (SOF ¶¶ 31). As a result, Mr. Jackson issued QueAnthonee a Final Warning and suspended him. (SOF ¶¶ 43). QueAnthonee was suspended, and not terminated, because he self-reported to Mr.

Jackson, and because he did not have a prior disciplinary record with the Company. (*Id.*). That same day, Mr. Jackson sent Plaintiff a text message requesting to speak first thing in the morning of May 17, 2021. (SOF ¶¶ 32). After receiving Mr. Jackson's text message, Plaintiff called and sent a text message to Mr. Halencak on the evening of Sunday, May 16th. (SOF ¶¶ 33). Mr. Halencak did not normally respond to work-related calls or text messages on Sunday evenings, so he did not respond to Plaintiff's text that evening. (*Id.*).

On May 17, 2021, Mr. Halencak and Mr. Jackson arrived to work at their typical start time, approximately 5:00 a.m. (SOF ¶¶ 35). That morning, Mr. Halencak asked Mr. Jackson if he knew why Plaintiff would have called and sent him a text message on a Sunday night. (*Id.*). Mr. Jackson informed Mr. Halencak that QueAnthonee had self-reported to smoking marijuana with Plaintiff while making product deliveries, and informed Mr. Halencak that he thought Plaintiff's employment should be terminated. (SOF ¶¶ 36). Mr. Halencak agreed with the decision, as did Human Resources. (SOF ¶¶ 37).

Later in the morning of May 17, 2021, Mr. Jackson and Security Officer Julyon Brown ("Mr. Brown") approached Plaintiff in the parking lot of the facility as he was arriving to work. (SOF ¶¶ 38). Mr. Jackson terminated Plaintiff's employment, effective immediately. (*Id.*). Plaintiff became combative, but eventually relegated his employee badge to Mr. Brown. (SOF ¶¶ 39). Following his termination, Plaintiff sent another text message to Mr. Halencak requesting to speak. (SOF ¶¶ 41). As he was a terminated former employee, Mr. Halencak did not respond to Plaintiff's text message. (SOF ¶¶ 42).

**II.     LEGAL STANDARD**

The Seventh Circuit has described summary judgment as the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Gekas v. Vasiliades*, 814 F.3d 890, 896 (7th Cir. 2016) (internal quotation

5

marks omitted), *quoting Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing both elements, and all reasonable inferences are drawn in the non-movant's favor. *Fisher v. Transco Services—Milwaukee, Inc.*, 979 F.2d 1239, 1242 (7th Cir. 1992). If the movant satisfies its burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. *Nitz v. Craig*, No. 08C334, 2013 WL 593851, *2 (N.D. Ill. Feb. 12, 2013). Summary judgment is proper if the non-moving party fails to come forward with specific facts, not mere allegations, showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

## III. ARGUMENT

### A. Plaintiff's Claims of Race Discrimination Under Title VII, Section 1981, and the IHRA[2], Fail as a Matter of Law.

The Seventh Circuit discarded the distinction between direct and indirect methods of proof in employment discrimination cases and clarified that all evidence must be evaluated as a whole. *Lauth v. Covance, Inc.*, 862 F.3d 708, 715 (7th Cir. 2017). The proper inquiry is: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *Id.* However, a plaintiff may still show that his claim survives when viewed in the burden-shifting

---

[2] Illinois courts apply the federal Title VII framework to claims of discrimination made under the Illinois Human Rights Act. *Grimes v. Cnty. of Cook,* 455 F. Supp. 3d 630 (N.D. Ill. 2020). Similarly, claims of discrimination brought under Section 1981 are analyzed under the federal Title VII framework. *Noble v. Ne. Illinois Reg'l Commuter R.R. Corp.,* 130 F. Supp. 3d 1166 (N.D. Ill. 2015).

6

framework of the *McDonnell Douglas* test or by providing sufficient evidence that demonstrates, when viewed cumulatively, that the adverse employment action was discriminatory. *David v. Bd. of Trus. of Cmty. College Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Under *McDonnell Douglas*, Plaintiff has the burden of establishing that he: (1) belongs to the protected class; (2) met PTS's legitimate job expectations; (3) suffered an adverse employment action; and (4) received less favorable treatment than others who were similarly situated but not in his protected class. *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008); *Alexander v. Wisconsin Dep't of Health & Fam. Servs.*, 263 F.3d 673, 681–82 (7th Cir. 2001) (applying *McDonnell Douglas* to § 1981 discrimination claims); *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866 (7th Cir. 2016) (applying *McDonnell Douglas* to discrimination claims brought under IHRA). If Plaintiff establishes these *prima facie* elements, the burden shifts to PTS to articulate a "legitimate, nondiscriminatory reason" for its actions. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017). If successful, the burden then shifts back to Plaintiff, who must produce evidence "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).

Here, Plaintiff cannot prove that he was meeting PTS's legitimate job performance expectations, that any similarly-situated, non-African American employee was treated more favorably than him, or that PTS's legitimate reasoning for his termination was pretextual.

       *i.*      ***Plaintiff cannot demonstrate any racial animus whatsoever***.

As an initial matter, there is a strong presumption against discrimination because Plaintiff was hired and fired by the ***same*** person – Mr. Jackson. When an employee is hired and fired by the same decision-maker, a presumption of nondiscrimination arises. *EEOC v. Our Lady of the*

*Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996) (where plaintiff was hired and fired by the same decision-maker in 10 months, the inference has strong presumptive value of nondiscrimination); *see also Love v. Cmty. Nutrition Network*, No. 09-CV-4937, 2010 WL 5185089, at *7 (N.D. Ill. Dec. 16, 2010). Here, Mr. Jackson both hired and terminated Plaintiff's employment, creating a strong presumption against discrimination. (SOF ¶¶ 7, 38). Additionally, the fact that Mr. Jackson also recruited Plaintiff, gave him several pay raises, approved substantial overtime for Plaintiff on a weekly basis, gave him positive performance evaluations, and did not issue him written discipline in instances where it was otherwise justified or warranted, further demonstrates a lack of racial animus towards Plaintiff. (SOF ¶¶ 16-18; *see also E.E.O.C. v. RJB Properties, Inc.*, 857 F. Supp. 2d 727, 748 (N.D. Ill. 2012)). Further undermining Plaintiff's race discrimination claim, Plaintiff and Mr. Jackson are the *same* race – African American. (SOF ¶¶ 1, 4). Indeed, the racial demographics of the Transportation and Security Department (100% African American at the time of his termination) likewise undermines Plaintiff's race claim. (SOF ¶ 5; *see also Hansel v. Prairie Industries, Inc.*, 2014 WL 5393924, at *14 (W.D. Wis. 2014) (looking at the percentages of certain groups as opposed to the raw numbers in each group). Lastly, the fact that Plaintiff never complained of race discrimination during his employment at PTS, despite being well-aware of the avenues to do, further demonstrate that Plaintiff's race discrimination claim is baseless. (SOF ¶ 44; *see also Cole v. Bd. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 901 (7th Cir. 2016) (affirming summary judgment for the employer where plaintiff never complained of race discrimination, and ethics complaint lodged against employer was wholly unrelated to race).

> ii. ***Plaintiff was not meeting PTS's legitimate job performance expectations at the time of his termination.***

In the six months prior to his termination, Plaintiff received several verbal reprimands from his Supervisor, Mr. Jackson. (SOF ¶¶ 20). Plaintiff's ongoing performance concerns were witnessed by Mr. Fiedler, Plaintiff's frequent driving partner, and many other coworkers. (SOF ¶¶ 53-57). Plaintiff frequently made stops to car dealerships, purchased his personal vehicle, smoked marijuana, and drank alcohol while making product deliveries on Company time. (*Id.*). Furthermore, on May 16, 2021, Plaintiff's colleague, QueAnthonee Jackson, self-reported to Mr. Jackson that he and Plaintiff had smoked marijuana in a Company vehicle together on multiple occasions while making product deliveries. (SOF ¶¶ 31). Plaintiff's actions not only placed Plaintiff and his driving partner at risk, but they put PTS's state certification at issue, because PTS is required to comply with all Illinois regulations regarding the delivery of cannabis. (SOF ¶¶ 3).

Here, Plaintiff's performance was not meeting PTS's performance expectations, going as far as to jeopardize the Company's ability to operate and comply with state regulations. (*Id.*). Not only is there no evidence of discriminatory animus towards Plaintiff, but the undisputed evidence also shows that Plaintiff was treated favorably, as Plaintiff's employment could have previously been terminated for any of the myriad of instances of egregious Company policy violations, including violations of the Company's Drug Free and Alcohol Free Policy. (SOF ¶¶ 20-24). Instead, PTS only terminated Plaintiff's employment following a confession from Plaintiff's colleague. (SOF ¶¶ 31-38). Plaintiff's claim that his termination was discriminatory ignores the plain evidence, including a self-report that jeopardized another employee's employment security. *Abdel-Ghaffer v. Illinois Tool Works, Inc.*, Case No. 12 C 5812, 2015 WL 5025461, *11 (N.D. Ill. Aug. 25, 2015) (summary judgment was appropriate where plaintiff had no evidence other than personal opinion and speculation that the decisions to place him on a PIP and terminate his employment were motivated by discriminatory animus); *see Hudson v. Miramed Revenue Grp.*,

9

No. 15 C 4945, 2016 WL 6948374, at *4-5 (N.D. Ill. Nov. 26, 2016) (concluding that no reasonable jury could find discrimination where neither race or color were mentioned in conjunction with any action taken toward plaintiff, and evidence showed similarly situated coworkers were treated the same as the plaintiff); *see Keys v. Foamex, L.P.,* 264 F. App'x 507, 508 (7th Cir. 2008) (employer's legitimate, non-discriminatory reason for discharging African-American employee, that he tested positive for marijuana use after engaging in reportedly strange behavior at work, was not pretext for race discrimination); *see also Blunt v. Exelon/Commonwealth Edison Co.,* No. 07 C 6753, 2009 WL 2244703, at *5 (N.D. Ill. July 28, 2009) (granting summary judgment to employer, holding that drug use in the workplace was grounds for disciplinary action, including termination).

### iii. *Plaintiff has not provided any evidence that similarly-situated, non-African American employees were treated more favorably than him.*

Plaintiff's race discrimination case is further doomed because he simply cannot demonstrate that a similarly-situated, non-African American employee was treated more favorably than him. "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Fisher v. Bd. of Educ. of Prairie-Hills Elem. Sch. Dist. 144*, No. 18 C 4234, 2020 WL 1248669, at *8 (N.D. Ill. Mar. 16, 2020). In examining similarly situated comparators, "[t]he basic question is whether the situations are similar enough…to provide support for a reasonable inference of discrimination." *Lane v. Riverview Hosp.*, 835 F.3d 691, 696 (7th Cir. 2016). Courts should consider whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications. *David*, 846 F.3d at 225–26. The burden of establishing this belongs to Plaintiff. *Id.* at 226.

Plaintiff offers no competent evidence bearing this element. While Plaintiff attempts to identify one employee as a purported comparator, Mr. Fiedler (White), Plaintiff's testimony regarding Mr. Fiedler's employment and transfer is completely unsupported and based on misguided facts. Plaintiff claims that Mr. Fiedler, Plaintiff's colleague in the Security and Transportation Department, transferred into a different department because of Mr. Jackson's cursing and because of an issue he encountered with another employee within the department. (SOF ¶¶ 48). As a result of this belief, Plaintiff reaches the entirely unsupported conclusion that Mr. Fiedler was allowed to transfer because of his race. (*Id.*). Plaintiff is incorrect.

Mr. Fiedler began his employment with PTS in November 2019 and was hired to work in the Security and Transportation Department where he reported directly to Mr. Jackson. (SOF ¶¶ 49). Mr. Fiedler remained employed in the Security and Transportation Department until approximately November 2020. (*Id.*). During that time, Mr. Fiedler encountered only one issue, involving his driving partner, Ms. Edwards. (SOF ¶¶ 50). This occurred approximately one to two months after Mr. Fiedler's hire in November 2019. (*Id.*). Mr. Fiedler discussed the issue with Mr. Jackson and Human Resources, and he considered the issue resolved. (SOF ¶¶ 52).

Since the time of his hire, Mr. Fiedler made it known to PTS, Mr. Jackson, Mr. Halencak, and his colleagues that he was interested in working in the Cultivation Department. (SOF ¶¶ 49). When an opportunity to transfer to Cultivation arose, Mr. Halencak offered Mr. Fiedler the opportunity to transfer. (*Id.*). The transfer went through, and Mr. Fiedler transferred to the Cultivation Department. (*Id.*). However, in or around the Summer of 2021, Mr. Fiedler realized that he did not enjoy working in Cultivation and requested to transfer back to Security and Transportation. (*Id.*). Mr. Fiedler was transferred back to the Security and Transportation Department and continued working with Mr. Jackson. (*Id.*).

Plaintiff cannot show that he was treated less favorably than Mr. Fiedler or more similarly-situated non-African American employees. Instead, Plaintiff relies solely on his knowledge that Mr. Fiedler transferred out of the Security and Transportation Department to Cultivation as the basis for his belief that his termination was based on race.

Without any adequate comparators, no reasonable factfinder could conclude that similarly-situated employees were treated more favorably than Plaintiff. *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 412 (7th Cir. 2018). Accordingly, Plaintiff's race discrimination claims fail.

> **iv. PTS had a legitimate, non-discriminatory reason for terminating Plaintiff's employment, and Plaintiff cannot demonstrate pretext**

Assuming *arguendo* that Plaintiff could establish a *prima facie* case, which he clearly cannot, his race discrimination claims nonetheless fail, because PTS had a legitimate, nondiscriminatory reason for terminating his employment, and Plaintiff cannot demonstrate that this reasoning was pretext (*i.e.*, a complete lie) to cover up discrimination. Indeed, PTS terminated Plaintiff's employment for smoking marijuana in a Company vehicle during work hours. (SOF ¶¶ 36; *see also Keys*, 264 F. App'x 507, at 508 (employer's legitimate, non-discriminatory reason for discharging African-American employee, that he tested positive for marijuana use after engaging in reportedly strange behavior at work, was not pretext for race discrimination); *see also Blunt*, No. 07 C 6753, 2009 WL 2244703 at *5 (granting summary judgment to employer, holding that drug use in the workplace was grounds for disciplinary action, including termination).

As for pretext, which Plaintiff cannot demonstrate, the question is not whether the PTS's stated reason was incorrect, inaccurate, or unfair, but whether it was honest. *Perez v. Thornton's, Inc.*, 731 F.3d 699, 708 (7th Cir. 2013). Thus, it is Plaintiff's burden to produce "specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth." *Hague v. Thompson Distrub. Co.*, 436 F.3d 816, 824 (7th Cir. 2006); *Davenport v. Northrop*

*Grumman Sys. Corp.*, 281 Fed. Appx. 585, 588 (7th Cir. 2008) (plaintiff failed to establish pretext because she could not show that defendant's decisions were a lie to mask discriminatory motive).

Plaintiff has failed to cast doubt upon the legitimacy of Mr. Jackson's explanation for terminating his employment. The termination was the result of Plaintiff's colleague, QueAnthonee Jackson's, self-reporting of smoking marijuana in a Company vehicle with Plaintiff. (SOF ¶¶ 31). QueAnthonee was issued a Final Warning and suspended as a result. (SOF ¶¶ 43). Plaintiff was terminated given his history of performance issues, including a prior allegation of smoking cannabis while delivering Company products on Company time. (SOF ¶¶ 21-22, 36). Plaintiff's failure to make a sufficient showing of pretext further warrants dismissal of his discrimination claims. *See Blunt,* No. 07 C 6753, 2009 WL 2244703 at *5 (plaintiff's failure to show that employer's reasons for drug testing and termination were pretext for discrimination results in his admission that there were legitimate reasons for termination, and as such, warrant summary judgment for employer).

  **B.**  **Plaintiff's Title VII, Section 1981 and IHRA Retaliation Claims Fail.**

To establish a *prima facie* case of retaliation under the direct method, Plaintiff must allege: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) a causal link between the two. *Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). If a prima facie case is established, the burden shifts to PTS to articulate some legitimate, nonretaliatory reason for its action. *Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016). If PTS does so, the burden shifts back to Plaintiff, who must present evidence that the stated reason is pretext. *Id*. Under the indirect method, the first two elements remain the same, and Plaintiff must show that he was performing her job satisfactorily and was treated less favorably than a similarly situated employee who did not complain of discrimination. *Stephens*, 569 F.3d at 786–87.

Plaintiff claims he was unlawfully terminated in retaliation but fails to allege any protected

activity he engaged in.

### *i.     Plaintiff never made a complaint that qualifies as protected activity.*

During his deposition, Plaintiff admitted under oath that he ***never*** complained of race discrimination. (SOF ¶¶ 44). As such, his claim fails outright as a matter of law, since he cannot demonstrate that he engaged in protected activity. *Sitar v. Indiana Dept. of Transp.,* 344 F.3d 720, 727 (7th Cir.2003) *(*affirming the district court's grant of summary judgment to the employer on the plaintiff's retaliation claim because the plaintiff's complaint to his employer "did not invoke any action protected by Title VII"). Instead, Plaintiff alleges that he had a conversation with Mr. Halencak at some point in either 2020 or 2021 regarding Mr. Fiedler's transfer to the Cultivation Department. (SOF ¶¶ 46). This conversation with Mr. Halencak does not qualty as protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir.2006); *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir.1997) (an employee's complaint of harassment constitutes a protected activity only if the complaint indicates that "the discrimination occurred because of sex, race… or some other protected class"). Plaintiff's conversation with Mr. Halencak fails to constitute protected activity because it lacked a complaint of discrimination as opposed to a general dissatisfaction with Mr. Fiedler's transfer. (SOF ¶¶ 46); *see Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016) ("[Statutorily-protected activity] requires more than simply a complaint about some situation at work, no matter how valid the complaint might be.").

Additionally, Plaintiff alleges that he ***intended*** to speak to Mr. Halencak and complain about Mr. Jackson's cursing and his alleged discriminatory behavior towards Plaintiff of not allowing Plaintiff to transfer out of the Security and Transportation Department. (SOF ¶¶ 45). Plaintiff's alleged intention to complain to Mr. Halencak about Mr. Jackson is not sufficient to constitute protected activity. *See Reed v. Innovative Health & Fitness Ltd.,* 259 F. App'x 875, 878

14

(7th Cir. 2008) (denying Plaintiff's claim of retaliation based on Plaintiff's intention and threat to file a lawsuit). Thus, the record is clear that Plaintiff never engaged in protected activity under Title VII, Section 1981 nor the IHRA.

### ii.  *Plaintiff cannot establish a causal connection under the direct method*.

Additionally, Plaintiff cannot demonstrate a causal connection between his termination and any purported protected activity.  Indeed, the temporal proximity between Plaintiff's 2020 or 2021 conversation with Mr. Halencak and his May 2021 termination is too great to support retaliation. *See Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 513 (7th Cir.2012) (nine-month gap did "little to raise suspicion"); *Jajeh v. County of Cook*, 678 F.3d 560, 570 (7th Cir.2012) (five-month gap was not suspicious timing); *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010) (six-month lag "too long to infer a link between the two").

Moreover, the fact that Mr. Jackson – the decision-maker – was **not** aware of Plaintiff's general complaints to Mr. Halencak further dooms his retaliation claim. *Isbell v. Baxter Healthcare, Corp.*, 273 F. Supp. 3d 965, 983 (N.D. Ill. 2017).  Since a showing that Mr. Jackson was aware of the alleged protected activity is fundamental to establishing retaliatory motive, Plaintiff cannot demonstrate a causal link between any of his alleged protected activity and Mr. Jackson's decision to terminate him. *Brown v. Ford Motor Co.*, 96 F. Supp. 2d 813, 819 (N.D. Ill. 2000); *Stinson v. Cty. of Cook*, No. 18 C 1614, 2020 WL 6870816, at *17 (N.D. Ill. Nov. 23, 2020) ("A valid retaliation claim requires that the decisionmaker know of the protected activity..."). Even if that were not the case, "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter." *Carter*, 778 F.3d at 660.

### iii.  *Plaintiff's retaliation claim likewise fails under the indirect method*.

Plaintiff cannot establish a *prima facie* case under the indirect method because he has not shown that he was treated less favorably than any similarly-situated, non-African American employee who did not engage in statutorily protected activity. Mr. Fiedler, Plaintiff only purported comparator, did not make a discrimination complaint against Mr. Jackson, or anyone at PTS. (SOF ¶¶ 50). This lack of evidence is fatal to his claim. *Isbell*, 273 F. Supp. 3d at 983 (denying summary judgment where "[Plaintiff] does not identify persons who did not make complaints but were treated more favorably."). Even assuming, *arguendo*, that he could establish a *prima facie* case of retaliation, which he cannot, Plaintiff is unable to demonstrate that Mr. Jackson's decision to terminate his employment was pretext for retaliation. As discussed in § A(iv) above, Plaintiff simply has no evidence that Mr. Jackson's legitimate, non-retaliatory reason for terminating Plaintiff was dishonest. *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Without evidence that PTS's reason for terminating his employment was fabricated, Plaintiff's retaliation claims must fail.

### C. Plaintiff's Illinois Biometric Privacy Act Claim Fails.

Plaintiff alleges that PTS violated Sections 15(b) and (c) of the Illinois Biometric Privacy Act when it acquired Plaintiff's biometric information to clock him in and out of work. Plaintiff alleges that PTS "failed to provide [Plaintiff with] a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA." (Dkt. 34, ¶ 91). Plaintiff furthermore alleges that PTS "never informed Plaintiff in writing that his biometric identifiers and/or biometric information were being collected, captured, stored, and/or used, nor did Defendant inform Plaintiff in writing of the specific purpose(s) and length of term for which his biometric identifiers and/or biometric information were being

collected, stored, used, and disseminated as required by 740 ILCS 14/15(b)(1)-(2)." (Dkt. 34, ¶ 101).

Plaintiff's claims must fail in their entirety because Plaintiff provided his voluntary consent for the use of his biometric identifiers prior to his use PTS's biometric clock. (SOF ¶¶ 59). On November 22, 2019, Plaintiff signed PTS's Biometric Information Privacy Policy. (*Id.*). PTS's Policy complies with the requirements of the Illinois Biometric Information Privacy Act, by providing Plaintiff with information on PTS, its vendors and/or the licensor's retention schedule and guidelines for permanently destroying Plaintiff's biometric identifiers. (SOF ¶¶ 60-61). Plaintiff never revoked his consent. (SOF ¶¶ 65).

Lastly, fatal to his BIPA claims, Plaintiff testified under oath during his deposition that the allegations in the BIPA counts (Counts VII and VII) are ***not*** accurate or truthful. (SOF ¶ 67; Young Dep. 98:2-100:6). Thus, his BIPA claims fail for this additional reason.

As such, Plaintiff's claims that PTS violated the Illinois Biometric Privacy Act are entirely baseless and PTS is entitled to summary judgment.

## IV. CONCLUSION

For these reasons, Defendant Progressive Treatment Solutions, LLC respectfully requests that the Court enter summary judgment on all of Plaintiff's claims and enter any further relief.

Dated: January 20, 2023                                              Respectfully submitted,


                                                                             */s/ Michael A. Wilder*
                                                                             Michael A. Wilder IL# 6335703

Michael Wilder IL# 6291053

mwilder@littler.com
Yara Mroueh IL# 6323486
ymroueh@littler.com
Littler Mendelson, P.C.
321 North Clark Street, Suite 1100
Chicago, Illinois 60654
Phone: (312) 372-5520

## **CERTIFICATE OF SERVICE**

I, Michael A. Wilder, an attorney, hereby certify that on January 20, 2023, I caused a true and correct copy of the foregoing document to be filed electronically with the Clerk of the Court, using the Court's CM/ECF system, and served via Fedex mail to:

>LaMonte R Young, Sr.
>219 St. John Drive
>Cahokia, Illinois 62206

        */s/ Michael A. Wilder*
        Michael A. Wilder